UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NEIGHBORHOOD ENTERPRISES,          )
INC., et al.,                      )
                                   )
      Petitioners,                 )
                                   )
    vs.                            )          Case No. 4:07CV1546 HEA
                                   )
CITY OF ST. LOUIS, MISSOURI, et al.,   )
                                   )
      Respondents,                 )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Cross Motions for Summary Judgment,
[Doc. No's 61 and 63].  For the reasons set forth below, Respondents' Motion is
granted; Petitioners' Motion is denied.

## Introduction

Petitioners filed this Petition for Writ of Certiorari and Civil Rights Complaint
for Injunctive Relief against the City of St. Louis, the St. Louis Board of
Adjustment, the individual members of the Board of Adjustment, in their official
capacity, and Mary Hart Burton, in her official capacity as the Zoning Administrator
for the City.  The Defendants remaining in this action are the City of St. Louis and
the City of St. Louis Board of Adjustment.[1]  This Petition/Complaint alleges that the

---

[1] Pursuant to the Court's dismissal of the individual members of the Board and Mary Hart
Burton in its November 5, 2007 Order, Petitioners did not include them in their Amended Petition.

decision by the Board of Adjustment was illegal because the Board utilized a facially unconstitutional Zoning Code to limit Petitioners' Freedom of Speech in violation of the United States and Missouri Constitutions; the decision was unconstitutional as applied in violation of the United States and Missouri Constitutions; the decision was illegal because it was an illegal exercise of prior restraints, in violation of the United States and Missouri Constitutions; that the decision was illegal because it deprived Petitioners of equal protection under the law, in violation of the Fourteenth Amendment of the U.S. Constitution.

Petitioners also seek recovery pursuant to 42 U.S.C. § 1983 for alleged violations of their free speech rights under the U.S. and Missouri Constitutions and for violations of their due process rights under the U.S. and Missouri Constitutions.

## **Procedural Background[2]**

On August 31, 2007, Respondents removed this action from the Circuit Court for the City of St. Louis, Missouri based on the Court's federal question jurisdiction. 28 U.S.C. § 1331.  Respondents alleged in their Notice of Removal that the Petition

───────────────────

The Court dismissed the St Louis Department of Public Safety, Division of Building and Inspection in its March 17, 2008 Order.

[2]  The Court's Opinion, Memorandum and Order of November 5, 2007 sets out the facts alleged in Petitioners' Petition, and therefore all of the alleged facts will not be repeated herein.

raises particular federal questions which arise under the Civil Rights Act of 1871, 42

U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution.

Specifically, the Notice set forth that

> Respondents are specifically accused of violating Petitioners' rights of
> free speech under the First Amendment to the U.S. Constitution,
> Petitioners' federal equal protection rights under the 14th Amendment
> of the Constitution, and pursuant to 42 U.S.C. § 1983, of acting under
> color of law to deprive Petitioners of their civil rights to due process
> under law.

The parties agree that the facts are not in dispute and resolution of this matter

by summary judgment is appropriate.  For the purposes of the Motions for Summary

Judgment, the parties have submitted a Joint Statement of Uncontested Facts.

Those facts are as follows:

Sanctuary In The Ordinary ("Sanctuary") is a tax-exempt, not-for-profit

organization.  Sanctuary's properties are managed by Neighborhood Enterprises,

Inc. ("Neighborhood Enterprises"), a property management company.

Neighborhood Enterprises describes itself as a "self-supporting housing ministry

that manages rental housing mostly on the near south side of St. Louis."

Missouri Eminent Domain Abuse Coalition (MEDAC) is a civic organization

concerned about eminent domain practices.  Jim Roos is the founder of Sanctuary,

founder of Neighborhood Enterprises, and coordinator and spokesperson for

MEDAC.

The City of St. Louis (the "City") is a Missouri municipal corporation organized under Missouri law.

Roos describes himself as a critic of the City's use of eminent domain for private development.  Jim Roos and MEDAC, with tenant approval, commissioned a sign/mural[3] for the south side of 1806-08 S. 13th, a Sanctuary-owned building in the Near Southside Redevelopment Area.  Roos described the sign/mural as a "poignant way . . . to make a statement."  The sign/mural, which was completed in March 2007, contains the words "End Eminent Domain Abuse" inside a red circle and slash.  The design of the sign/mural is similar to the design used by MEDAC in its literature, buttons, and other materials.  The sign/mural is approximately 363 or 369 square feet in area.  The sign/mural is visible from, among other areas, Interstates 44 and 55 and the Soulard neighborhood.

On April 10, 2007, the City's Division of Building and Inspection ("B&I") issued to Sanctuary, care of Neighborhood Enterprises, a citation declaring the sign/mural an "illegal sign."  The citation explained that "[p]ermits must be acquired

---

[3]  Respondents'/Defendants' position is that the object in issue is a sign. Petitioners/Plaintiffs refer to this object as a mural. For purposes of this document, and not for any determination as to legally proper terminology, the object is referred to herein as a "sign/mural."

for signs of this type" and gave instructions for how to go about obtaining a permit.

Consistent with the instructions in B&I's April 10, 2007, citation, Sanctuary and

Neighborhood Enterprises[4] filed a sign permit application with B&I on May 14,

2007.

On May 30, 2007, the City's Zoning Administrator sent Sanctuary a letter

denying its sign permit application because it did not meet certain requirements of

the City Zoning Code.  The "Basis for Denial" accompanying the letter stated that

the building on which the sign/mural was painted was zoned "D," or "Multiple

Family Dwelling District," and identified, as the "applicable Zoning Code

provisions": Section 26.68.010; Section 26.68.020(17), (20), (21), (22) & (24); and

Section 26.68.080(A), (B), (D) & (E)(2) of the St. Louis City Revised Code.

A subsequent explanation of the Zoning Administrator's basis for denial, admitted at

the Board of Adjustment hearing, stated: "Appellant has painted a wall sign on the

building at this address. The wall face of the building on which the sign has been

painted does not have street frontage as defined in the Zoning Code, and is therefore

not entitled to signage. In the 'D' zoning district any signage can only be erected,

altered and maintained for and by a conforming use and must be clearly incidental to

_____

[4] Sanctuary and Neighborhood Enterprises will hereinafter be referred to collectively as "Sanctuary."

the operation of the conforming use; this property is assessed as a two-family dwelling. The maximum allowable square footage for any sign within this district is 30 sq. ft.; based on the diameter of the circular sign it is approximately 363 sq. ft. in area.  Variances will be required in order to permit this sign."  The May 30, 2007, letter denying Sanctuary's sign permit application stated that Sanctuary could appeal the denial to the City's Board of Adjustment, which Sanctuary did on June 5, 2007.

On July 11, 2007, the Board of Adjustment heard Sanctuary's appeal of the permit denial. At the hearing, Sanctuary's attorney argued, among other things, that: (I) Sanctuary's sign/mural does not require a permit because, as a "work of art" or a "civic symbol[] or crest[]," it is exempted from the Zoning Code's definition of "sign"; and, alternatively, (ii) the Zoning Code violates the free speech protections of the U.S. and Missouri Constitutions.

The Board of Adjustment ("Board") upheld the denial of the sign permit in an order filed on July 25, 2007.  The Board's Findings of Fact stated that the "[p]roposed sign is in conflict with Sections 26.68.010, 26.68.020 and 26.68.080 of the Zoning Code of the City of St. Louis."  The Board's "Conclusion of Law and Order" stated, in its entirety:

> The sign is located in Zone D, the multiple family dwelling district, and the sign is located on a residential building. The sign is substantially larger than the footage allowed by the Zoning Code and it is located on

the side of the building in contravention to the requirements of the Zoning Code. Board Member Hitt made a motion to uphold the decision to deny the sign permit as the size and location of the sign were in violation of the Zoning Code.

The above motion, made by George Hitt and seconded by Joe Klitzing was passed by a 4-0 vote of the Board, with Board member Caruso voting against.

Two of the City's justifications for restricting outdoor signs are traffic safety and aesthetics.  Neither the City nor Board of Adjustment possesses any reports, studies, memoranda, or other documents underlying, concerning, or supporting the regulation of outdoor signs in Chapter 26.68 of the St. Louis Revised Code. Neither the City nor the Board of Adjustment is aware of any studies, reports or memoranda conducted by any person regarding whether the City's restrictions on outdoor signs affect traffic safety.  Neither the City nor Board of Adjustment is aware of any studies, reports or memoranda conducted by any person regarding whether the City's restrictions on outdoor signs affect the aesthetics of the City or surrounding neighborhood.  Neither the City nor Board of Adjustment is aware of any studies, reports or memoranda conducted by any person regarding whether the City's restrictions on outdoor signs affect property values in the City.  Neither the City nor Board of Adjustment is aware of any traffic incidents in which any driver involved cited or mentioned Sanctuary's sign/mural, or any "painted wall sign," as

contributing to such incident.  Neither the City nor Board of Adjustment is aware of any studies, reports or memoranda discussing the impact of Sanctuary's sign/ mural on the flow of traffic on any street or highway.

The City and Board of Adjustment have no internal memoranda or communications, and no communications to or from them, discussing the adoption or enforcement of the regulations of outdoor signs in Chapter 26.68 of the St. Louis Revised Code.  The City and Board of Adjustment have no minutes or transcripts of any City Board of Aldermen meeting, including any committee or subcommittee of such Board, concerning or relating to the regulation of outdoor signs in Chapter 26.68 of the St. Louis Revised Code.

The St. Louis Zoning Code provides, "If for any reason it cannot be readily determined whether or not an object is a sign, the Community Development Commission shall make such determination."  St. Louis, Mo., Rev. Code § 26.68.020(17).  St. Louis, Mo., Ordinance 64687 (June 25, 1999) provides that "all functions and duties performed, or powers exercised prior to the effective date of this ordinance by personnel of the Community Development Commission pursuant to any City ordinance shall be performed by personnel of the Planning Commission as assigned by the Planning Commission."  The City has no written policy other than Chapter 26.68 of the Revised Code of the City of St. Louis for use in

determining if a sign contains the "symbol[] or crest[]" of a civic

organization as those terms are used in St. Louis Rev. Code § 26.68.020(17).  The

City has no written policy other than Chapter 26.68 of the Revised Code of the City

of St. Louis for use in determining if something is "art" as that term is used in St.

Louis Rev. Code § 26.68.020(17)(e).

The City's policies for implementing the provisions of the City Zoning

Code's sign regulations are contained in Chapter 26.68 of the Revised Code of the

City of St. Louis.

### Discussion

**Writ of Certiorari**

In their Amended Petition, Petitioners' Petition for Writ of Certiorari requests

this Court conduct a *de novo* administrative review of the Board of Adjustment

decision.  Count I of this Petition claims that the decisions were illegal because they

utilized a facially unconstitutional zoning code to limit Petitioners' freedom of

speech.  Count II alleges that the decisions by the Division of Building and

inspection and the Board of Adjustment were illegal because the Zoning Code is

unconstitutional as applied.  Count III alleges that the decisions by the Division of

Building and inspection and the Board of Adjustment were illegal because they were

an illegal exercise of prior restraints.  In Count IV, Petitioners claim that the

decisions by the Division of Building and Inspection and the Board of Adjustment

were illegal because they deprived Petitioners of equal protection under the law.

These counts are all brought under § 89.110, RSMo.

Section 89.110 provides:

Any person or persons jointly or severally aggrieved by any decision of
the board of adjustment, any neighborhood organization as defined in
section 32.105, RSMo, representing such person or persons or any
officer, department, board or bureau of the municipality, may present to
the circuit court of the county or city in which the property affected is
located a petition, duly verified, setting forth that such decision is
illegal, in whole or in part, specifying the grounds of the illegality. Such
petition shall be presented to the court within thirty days after the filing
of the decision in the office of the board. Upon the presentation of such
petition the court may allow a writ of certiorari directed to the board of
adjustment to review such decision of the board of adjustment and shall
prescribe therein the time within which a return thereto must be made
and served upon the relator's attorney, which shall not be less than ten
days and may be extended by the court. The allowance of the writ shall
not stay proceedings upon the decision appealed from, but the court
may, on application, on notice to the board and on due cause shown,
grant a restraining order. The board of adjustment shall not be required
to return the original papers acted upon by it, but it shall be sufficient
to return certified or sworn copies thereof or of such portions thereof as
may be called for by such writ. The return shall concisely set forth such
other facts as may be pertinent and material to show the grounds of the
decision appealed from and shall be verified. If, upon the hearing, it
shall appear to the court that testimony is necessary for the proper
disposition of the matter, it may take additional evidence or appoint a
referee to take such evidence as it may direct and report the same to
the court with his findings of fact and conclusions of law, which shall
constitute a part of the proceedings upon which a determination of the
court shall be made. The court may reverse or affirm, wholly or partly,
or may modify the decision brought up for review. Costs shall not be

- 10 -

allowed against the board unless it shall appear to the court that it acted with gross negligence, or in bad faith, or with malice in making the decision appealed from. All issues in any proceedings under sections 89.080 to 89.110 shall have preference over all other civil actions and proceedings.

This Court's review of a zoning decision is limited.   "'[N]either "this Court nor the [trial] [c]ourt may try the matter de novo or substitute our judgment for that of the administrative tribunal."'  *Wolfner v. Bd. of Adjustment,* 672 S.W.2d 147, 150 (Mo.App.1984) (quoting *Stockwell v. Bd. of Zoning Adjustment,* 434 S.W.2d 785, 789 (Mo.App.1968))." *State ex rel. Karsch v. Camden County,* 2010 WL 299253, 1 (Mo.App. 2010).  The Court does not reweigh the evidence.  *Versatile Mgmt. Group v. Finke,* 252 S.W.3d 227, 233 (Mo.App.2008).  This Court will not "disturb [the Board's] decision unless it is clearly contrary to the weight of the evidence." *Medusa Aggregates Co. v. City of Columbia,* 882 S.W.2d 223, 224 (Mo.App.1994). "The scope of review is limited to determination of 'whether the Board's action is supported by competent and substantial evidence[5] upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of

---

[5] "Substantial evidence is defined as 'competent evidence which, if believed, would have probative force upon the issues.' " *Windy Point Partners, L.L.C. v. Boone Cty. Comm'n.,* 100 S.W.3d 821, 825 (Mo.App.2003) (quoting *Ford Leasing Dev. Co. v. City of Ellisville,* 718 S.W.2d 228, 233 (Mo.App.1986)).

its jurisdiction.'" *Teefey,* 24 S.W.3d at 684 (quoting *Hutchens v. St. Louis Cty.,* 848 S.W.2d 616, 617 (Mo.App.1993)); *see also Moto, Inc. v. Bd. of Adjustment,* 88 S.W.3d 96, 99 (Mo.App.2002). "In determining whether substantial evidence existed to support the Board's decision, a reviewing court must view the evidence and reasonable inferences therefrom in a light most favorable to the decision. *Teefey,* 24 S.W.3d at 684. If the evidence would support either of two different, opposed findings, the Court is bound by the determination of the administrative agency. *Versatile,* 252 S.W.3d at 233. "A question of law is a matter for the independent judgment of the reviewing court." *Teefey,* 24 S.W.3d at 684. *Karsch,* 2010 WL 299253, at * 1.

In its conclusions the Board of Adjustment based its denial of the permit on the following: Petitioners sought a sign permit for the wall sign/mural. The sign is located in Zone D, the multiple family dwelling district; it is located on a residential building; and it is not located on the side of the building with frontage. Under the Zoning Code, a sign must conform to certain requirements as to size and placement. Based on the Zoning Code, because the sign in question was over the specified size and was placed on a side of the building without street frontage, the permit was denied.

These conclusions were rendered after the July 11, 2007 hearing. At that

hearing, testimony was presented.  The Zoning Plan Examiner testified that the maximum square footage for a sign in this zoning district is thirty square feet, and that the architect's drawings of the sign indicated that it was 369 square feet. Further, the Examiner testified that the sign was not on the side of the building with street frontage.[6]  Since the application came to the Zoning Plan Examiner as a sign application, he reviewed it as such.

Testimony was also heard from Petitioners.  Counsel for Petitioners testified that the Office of the Zoning Administrator should have considered whether the object in question was a sign or a mural, despite the fact that the application did not specifically make this request.  He further testified about his clients' beliefs that the object was art and that art is subjective to the eyes of the beholder and that it often makes a political statement.  He believed that his clients should be exempt from the permit requirement because the message painted on the wall was art and not a sign. He stated that his legal argument was based on the First Amendment.  He essentially argued that his clients' political speech through the painted wall was being hindered. He testified that his clients were requesting that Zoning consider whether the sign is a mural or a sign.

---

[6] Although Petitioners argue that there is no requirement that signs front the street, the Code's provisions set forth the number of signs "per frontage."  This limitation categorically requires street frontage.

Jim Roos also testified.  Mr. Roos testified that the building is owned by Sanctuary in the Ordinary.  He also testified that he believes that eminent domain is oppressive and violates his property rights under the Constitution.

Two other individuals testified.  Mr. Peters testified that he believes residents have limited means to voice their opinion and defend themselves from eminent domain abuse.  Mr. Patterson testified that the wall is not an advertisement, but a work of art and that he did not believe the painting to be a sign.

Based upon the above evidence, the Board of Adjustment concluded that the application for a sign permit should be denied.  Petitioners sought a sign permit.  Under the Zoning Code, a sign permit could not issue, since the object did not fall within the Code's parameters of allowable signs, i.e., size and placement in Zone D, multiple family dwelling district.  The *raison d'etre* for the hearing was the review of the denial of the *sign permit*.  Based on Petitioner's request, the Board of Adjustment reviewed the application as a sign permit.  The denial of the permit was based solely on the Zoning Code which sets out certain requirements for the issuance of sign permits.  Since the object did not satisfy those requirements, the Board denied the permit.  The decision was based on the record before the Board at the hearing; it was neither arbitrary nor capricious; neither unreasonable or unlawful.  Rather, it was simply a decision on the matter before it, *i.e.*, a review of the denial

of an application for a sign permit, based on the facts that the sign did not comply with the Code's sign restrictions.  Under the standards of review for this Court, the Court is not at liberty to reweigh evidence or substitute its judgment for that of the Board of Adjustment.  All reasonable inferences are to be found in favor of the decision.  Because the Board of Adjustment was approaching the issue for what it was, an application for a sign permit, the Board properly analyzed the evidence and concluded that the evidence clearly established that Petitioners were not entitled to a sign permit for the wall design.  The decision of the Board of Adjustment must, therefore be affirmed.  Respondents are entitled to judgment as a matter of law on Petitioners' Petition for Writ of Certiorari.

**Civil Rights Complaint**

Petitioners' "Civil Rights Complaint" states that it is brought pursuant to the First and Fourteenth Amendments of the United States Constitution; Article I, section 8 of the Missouri Constitution; The Civil Rights Act of 1871, 42 U.S.C. § 1983; and Section 527.010 RSMo.  Petitioners further state that they seek relief against the enforcement of the City Code's sign regulations and the practices and policies of the City that allegedly facially and as applied deny Petitioners the opportunity to engage in constitutionally protected communications.  Counts I and IV claim that the City Zoning Code's Sign Regulations are facially invalid under the

U.S. Constitution and the Missouri Constitution, respectively.  Counts II and V

claim that the City Zoning Code's Sign Regulations are unconstitutional as applied

under the U.S. Constitution and the Missouri Constitution, respectively.  Counts III

and VI allege Respondents exercised prior restraints in violation of Petitioners' Free

Speech rights under the U.S. Constitution and the Missouri Constitution,

respectively.  Count VII claims Respondents deprived Petitioners of equal

protection pursuant to the Fourteenth Amendment of the United States Constitution.

Petitioners seek reversal of the Board of Adjustment denial of the permit; a

declaration that the City Zoning Code's sign regulations violate the First and

Fourteenth Amendments to the United States Constitution and Article I, Section 8 of

the Missouri Constitution on their face and as applied to Petitioners, a judgment

declaring that the acts of the Division of Building and Inspection of the Board of

Adjustment denying the sign permit application illegally violated the First and

Fourteenth Amendments and Article I, section 8; a judgment declaring that the City

Zoning Code's sign regulations violate the equal protection guarantees of the

Fourteenth Amendment to the United States Constitution; a judgment permanently

enjoining Respondents from enforcing the City Zoning Code's sign regulations

generally and as against Petitioners in association with the mural at 1806-08 S. 13th

Street, St. Louis, Missouri; nominal damages in the amount of $1.00; and attorneys'

fees and costs pursuant to 42 U.S.C. § 1988.

The bizarre curiosity in this case is Petitioners' efforts to muddy the judicial waters through their inconsistent terminology, presumably to avoid the restrictions and requirements of the Sign Code. The initial facts leading up to this matter establish that Petitioners, when advised that signs of the nature of Petitioners' "End Eminent Domain Abuse" required a permit, the proceeded to apply for a *sign* permit and attached two arguments as to why the *sign* permit application should be approved. They argued the design was not a sign under the definition of "sign" and that they had a constitutional right to display the *sign* because such activity was protected by the First Amendment to the U.S. Constitution and by the Missouri Constitution. Petitioners then switched to attempting to re-characterize the painting as exempt from the permit requirement as a work of art or a civic crest, objects which are *not signs*. Petitioners do, however, acknowledge that their "art" is akin to "No Smoking" *signs*. They state "also painted on the *sign*, in smaller black lettering, are the online addresses of two website where interested views of the mural can go for mor information about eminent domain abuse." (Emphasis added). Petitioners also argued that they had a constitutional right to display the *sign* irrespective of City Zoning Code sign regulations because the mural constitutes speech protected by the U.S. and Missouri Constitutions.

The common sense notion of "sign" is set out under the City Code. A sign "means any object or device or part thereof situated outdoors which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business product, service, event, or location by any means including words, letters, figures, designs, symbols, fixtures, colors, motion illumination or projected images. Petitioners' designations notwithstanding, the painting at issue herein is the classic example of this common sense notion of sign. The painting is outside and is used to advertise, identify, direct and attract attention to what Petitioners believe is eminent domain abuse. It advertises online addresses for more information. It attracts attention to the perceived eminent domain abuse. It identifies Petitioners' issues with eminent domain practices of the City. This Court agrees with Petitioners that the painting is certainly political speech and is surely protected under the U.S. and Missouri Constitutions. Neither the definition of "sign" in the Code, (on 26.68.020(17)), nor the restrictions placed on signs, (Section 26.68.010)[7] infringe or impinge, facially or as applied to Petitioners, their

---

[7] Petitioners may only challenge those provisions of the Code which were actually applied to them. See, *Advantage Media, L.L.C. v. City of Eden Prairie* 456 F.3d 793, 796 -805 (8th Cir. 2006). *Advantage Media* affirms the general principle that in order to have standing to bring a First Amendment challenge a plaintiff must be contesting provisions upon which the restriction was based. See, e.g., *Brazos Valley Coalition for Life, Inc. v. City of Bryan, Texas*, 421 F.3d 314, 323 (5th Cir.2005) (no standing to challenge ordinance that did not apply to plaintiff's activities); Furthermore, even if the Court were to find any of the sections applied to Petitioner as unconstitutional, the entire Code would not be subject to invalidation. *Elk Grove Unified School*

Constitutionally protected political speech .

Indeed, signs are a form of expression protected by the First Amendment. However, unlike oral speech, signs may be regulated under the police powers of a municipality because they "take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.  It is common ground that governments may regulate the physical characteristics of signs...." *City of Ladue v. Gilleo*, 512 U.S. 43 (1994).

To evaluate the constitutionality of a restriction upon speech imposed by a sign ordinance, the Court must first determine whether the restriction is content-based, and then apply the proper level of scrutiny based on that determination. *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400 (8th Cir.1995).  A restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993).

Petitioners argue that, because one must look to the sign to determine if it is a sign which is regulated as opposed to works of art, civic crests, etc., the regulation must be considered "content-based."  At first blush the argument seems sound. However, the Court must consider the matter in more depth in light of applicable

---

*Diss.. V. Newdow*, 542 U.S. 1, 11-12 (2004).

constitutional law.

> At the heart of the First Amendment lies the principle that each person
> should decide for himself or herself the ideas and beliefs deserving of
> expression, consideration, and adherence. Our political system and
> cultural life rest upon this ideal. Government action that stifles speech
> on account of its message, or that requires the utterance of a particular
> message favored by the Government, contravenes this essential right.
> Laws of this sort pose the inherent risk that the Government seeks not
> to advance a legitimate regulatory goal, but to suppress unpopular ideas
> or information or manipulate the public debate through coercion rather
> than persuasion. These restrictions rais[e] the specter that the
> Government may effectively drive certain ideas or viewpoints from the marketplace.

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 114 S.Ct. 2445, 129

L.Ed.2d 497 (1994)(internal citations and quotation marks omitted).

In *Turner Broadcasting*, the Supreme Court acknowledged that "[d]eciding

whether a particular regulation is content based or content neutral is not always a

simple task," and referenced its statement in *Ward v. Rock Against Racism*, 491

U.S. 781 (1989), wherein it had explained that the "principal inquiry in determining

content neutrality, in speech cases generally and in time, place, or manner cases in

particular, is whether the government has adopted a regulation of speech because of

disagreement with the message it conveys." (emphasis added).

In the instant case, the evidence does not support a finding that the restrictions

prohibit signs in excess of thirty square feet in Zone D with frontage because the

City favors or disfavors any message a citizen might want to convey by use of such

a sign.  To the contrary, the evidence shows that as long as Petitioners comply with the restrictions, they are free to display any message they choose. This proof, in the Court's view, shows that the prohibition of 363 foot signs relates not to the content of Petitioners' message but, rather, to the method by which they wish to convey it.

This is not a constitutionally impermissible regulation. The City has a legitimate interest in controlling the non-communicative aspects of the medium of speech, as opposed to its communicative aspects.  *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).  Petitioners argue that it is the message rather than the medium that is being controlled by these restrictions.  They insist that, due to the limitations on the size of their sign, they cannot convey messages intended to reach the public.  The message contained in the sign is conveyed to the public, however, albeit in a smaller version, if Petitioners comply with the restrictions.  Thus, it does not follow that such size limitations amount to a content-based regulation of speech.

The Court must next determine whether plaintiff is being treated differently from others in terms of how the restrictions are applied.  There is no evidence that the restrictions were applied to Petitioners and not others.  Petitioners argue that crests and flags have no restrictions while signs containing political speech do.  The first problem with this argument is that it attempts to compare apples to oranges. If

the facts showed that others were being permitted to have oversized signs on the sides of their buildings and Petitioners were not, Petitioner's argument would have merit.  There are no facts which show that others were permitted oversized signs in Zone D area on parts of their buildings with no street frontage.  This is simply not the case before the Court.

The evidence does not support a conclusion that the City-by allowing flags crests, works of art-is favoring or disfavoring any message. Flags and crests and works of art are not ideas or viewpoints about which citizens might debate and disagree.  Because civic crests, works of art and flags are not the "stuff" of public debate, there is no danger that the City-by exempting them from other categories of signs-will "give one side of a debatable public question an advantage in expressing its views to the people" or "through the combined operation of a general speech restriction and its exemptions ... seek to select the permissible subjects for public debate and thereby to control the search for political truth."  *City of Ladue*, *supra* (internal citations and quotation marks omitted).  There is no risk of censorship (either by favoring or disfavoring content).  The Eighth Circuit has held "that an ordinance is content-neutral if it is 'justified without reference to the content of the regulated speech.'"  *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1220 (8th Cir.1997), (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791

(1989)).  Respondents' desire to promote traffic safety is in no way tied to the content of the signs it seeks to regulate.  The Court, therefore, concludes that the restrictions are not content-based regulations of speech in violation of constitutionally protected rights.

Because the regulation is content-neutral, it is constitutional if it "is 'narrowly tailored to serve a significant governmental interest, and ... leaves open ample alternative channels for communication of the information.' " *United States v. Nenninger*, 351 F.3d 340, 345-46 (8th Cir.2003) (quoting *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).  The interests expressed by the City are aesthetics and traffic safety.  These are significant governmental interests. *Metromedia Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981).  To be narrowly tailored, the regulation does not have to be the least restrictive means of furthering the City's interest.  *Thorburn v. Austin*, 231 F.3d 1114, 1120 (8th Cir.2000); *Pursley v. City of Fayetteville, Ark.*, 820 F.2d 951 (8th Cir.1987). Petitioners argue that their sign does not pose any different aesthetic or safety considerations than works of art.  While this might show that Petitioners disagree with the Respondent's conclusions concerning aesthetics and safety considerations, it does not convince the Court that the City's stated reasons for its enaction of the restrictions are either false or unreasonable.  Petitioner's sign contains small print

which cites a website for more information.  It may well be that travelers would

become distracted attempting to record that website.  Moreover, the figure painted

on the wall contains a slash through the words "End Eminent Domain Abuse."  Like

the website citation, travelers may become distracted trying to ascertain what was

written underneath the slash. With regard to the aesthetic consideration, Petitioner's

sign is more in tune with a billboard than a flag or crest.  Surrounding neighbors and

passers-by may find a billboard sized painting on the side of a residential building

aesthetically displeasing.  "[M]unicipalities have a weighty, essentially esthetic

interest in proscribing intrusive and unpleasant formats of expression." *Members of*

*City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806

(1984).  In light of these considerations, the Court concludes that both the aesthetic

and traffic safety rationales are sound, and that the prohibition is narrowly tailored

to prevent the traffic risks and to promote the aesthetic considerations that motivated

the passage of the size and placement restrictions.

The Court also finds that there are ample alternative channels for Petitioners

to communicate their political message aside from painting a 363 foot sign on the

side of a residential building.  Petitioners are free to place an appropriate sized sign

in the front of the building.  Likewise, Petitioners can secure a billboard in other

zoned areas with the same message.  Petitioner's argument that the sign should be

on the premises rather than off site is extremely weakened by the fact Petitioners do *not* live on the premises.  Petitioners can also distribute handbills (even at City parks teeming with the masses during festive occasions) containing information on their organization and their beliefs, to name a few alternatives.  The Court finds that there are ample avenues which Petitioners may traverse to publicize their ideas or opinions without the use of 363 foot paintings on the side of a building in the Zoned D area.  Because the Court has found that restrictions are content-neutral and meet the requirements of *Thorburn* and *Pursley*, Petitioners' First Amendment facial and "as applied" challenges must, and do, fail.

Petitioners also claim the restrictions violate the Equal Protection Clause of the Fourteenth Amendment.  The purpose of the Equal Protection Clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Village of Willowbrook v. Olech*, 528 U.S. 562,  (2000) (citations omitted).  Equal protection analysis "requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class."  *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307 (1976).

Because the restrictions are content-neutral, it does not "impermissibly interfere[ ] with the exercise of a fundamental right."  Nor is there either allegation or evidence that Petitioners are members of a "suspect class."  Strict scrutiny is therefore not required in connection with Petitioners' Equal Protection argument. There is no evidence of intentional or arbitrary discrimination.  The City has advanced rational bases for the restrictions.  Plaintiff's Equal Protection challenge to the Sign Ordinance fails.

Petitioners challenge the Sign Code as a prior restraint of their First Amendment rights.  The Supreme Court has set out two definitions of a prior restraint:  an ordinance that vests unbridled discretion in the licensor, *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 759 (1988); *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992), or an ordinance that does not impose adequate time limits on the relevant public officials, *see FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215 (1990).   Petitioners have established neither.  The latter definition is inapplicable here since there is no argument regarding time limits on the relevant officials.  Rather, Petitioners' prior restraint argument is based on their argument that the object in question is art.  In arguing that the term "art" has no definition in the Sign Code, therefore it lacks the "narrow, objective, and definite standards to guide" the permitting authority,  *Forsyth County v. Nationalist*

*Movement*, 505 U.S. 123, 131 (1992)  Petitioners' argument once again fails to recognize the limitations upon which the denial was based.  Claiming that the wall design object is "a work of art" does not make it so.  Petitioners' wall design falls squarely within the Code's definition of "sign."  The denial of the permit was based solely on the limitations specifically detailed in the Code.  The deciding officials had no discretion under the Code in denying the permit.  The wall design exceeded the size requirement and placement requirement and as such, the permit was denied.

Based upon the foregoing conclusions that neither the U.S. Constitution nor the Missouri Constitutions were violated, nor that Petitioners' Equal Protection rights were violated, Petitioners request for declaratory relief under 527.010 RSMo must be denied.

## Conclusion

The decision affirming the denial of Petitioners' sign permit was not arbitrary, capricious, unreasonable, unlawful, or in excess of the Board of Adjustment's jurisdiction.  The decision must therefore be affirmed.

The restrictions placed on signs in the Sign Code withstand scrutiny under Petitioners' constitutional challenges with respect to the denial of their sign permit. Respondents' are therefore entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Respondents' Motion for Summary Judgment, [Doc. 61] is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioners' Motion for Summary Judgment, [Doc. No. 63] is **DENIED**.

A separate judgment is entered this same date.

Dated this 29th day of March, 2010.


_____
      HENRY EDWARD AUTREY
   UNITED STATES DISTRICT JUDGE