UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NEIGHBORHOOD ENTERPRISES,    )
INC., et al.,    )
    )
      Petitioners,    )
    )
    vs.    )    Case No. 4:07CV1546 HEA
    )
CITY OF ST. LOUIS, MISSOURI, et al.,    )
    )
      Respondents,    )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on remand from the Eighth Circuit Court of
Appeals. In its Opinion, the Eighth Circuit concluded that Defendant City of St.
Louis' Zoning Code Sign Regulations Sections 26.68.020(17), 26.68.030 and
26.68.050 violated the Free Speech Clause of the First Amendment. The Court
remanded the matter for a determination by this Court of whether the
unconstitutional provisions are severable from the remainder of the Zoning Code.

Since the Eighth Circuit's Opinion remanding this matter, the City has
repealed Sections 26.68.030 and 26.68.050 and has amended 26.68.020 to define
various kinds of signs without regard to the content contained therein.

Accordingly, the mandate from the Appellate Court to determine whether the unconstitutional sections are severable has been rendered moot.[1]

Having determined that the Court is no longer required to analyze the severability of the previous unconstitutional sections, the Court is now faced with whether the Zoning Code in its current form withstands scrutiny. Petitioners have pending a Motion for Entry of Judgment and Permanent Injunction (Doc. No. 91); Respondents have pending a Motion for Entry of Judgment (Doc. No. 93).

The Free Speech Clause of the First Amendment provides that "Congress shall make no law ... abridging the freedom of speech," U.S. Const. amend. I, a restriction that is also applicable "to the political subdivisions of the states," *Whitton v. City of Gladstone,* 54 F.3d 1400, 1402 (8th Cir.1995). However, the First Amendment does not guarantee "the right to communicate one's view at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 647 (1981); *Members of City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 804 (1984) ("It has been clear since this Court's earliest decisions concerning the freedom of speech that the state may sometimes curtail speech."). Notably, while signs are a form of expression entitled to First Amendment protection, they "'pose distinctive problems that are subject to

---

[1] The Court agrees with the City that the unconstitutional sections were severable from the original Zoning Code. All three sections either exempted certain objects from the regulations or characterized objects as non-signs, and therefore not subject to the sign regulations. Striking the three sections from the Code effectively restricts all forms of signs without regard to content.

municipalities' police powers.  Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.'" *Whitton,* 54 F.3d at 1402–03 (quoting *City of Ladue v. Gilleo,* 512 U.S. 43, 48 (1994)).  A city, therefore, may validly enact ordinances regulating the time, place, and manner signs may be erected therein.  *Id.* This is power a municipality clearly has.

To evaluate the constitutionality of a municipality's sign regulation, the Court applies a "familiar framework."  *Id.* at 1403.   Because of  Respondents' repeal of the offending sections and the replacement thereof with definitions which no longer "make impermissible distinctions based *solely* on content or message conveyed," *Neighborhood Enters., Inc. v. City of St. Louis,* 644 F.3d 728, 736 (8th Cir.2011), the Court's determination is based on a content-neutral analysis, *i.e.* "intermediate scrutiny," *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 662 (1994), meaning they pass muster only if they are "narrowly tailored to serve a significant government interest, and ... leave open ample alternative channels for communication," *Clark v. Cmty. for Creative Non–Violence,* 468 U.S. 288, 293 (1984).  The City bears the burden of establishing that the ordinances in question are lawful. *E.g., United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions.").

With these general principles in clearly etched in the mind of the Court, the Court will proceed to address Petitioners' challenges to the sign ordinances.

As noted above, the Court first determines whether the new sign ordinance is content-based or content-neutral, in order to determine the level of scrutiny to which the ordinance is subject. "The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of disagreement with the message the speech conveys." *Iowa Right to Life Committee, Inc. v. Tooker,* 717 F.3d 576, 602 (8th Cir.2013) (citations omitted). To be sure laws that "impose burdens on speech without reference to the idea or views expressed are in most instances content neutral." *Turner Broad.,* 512 U.S. at 643; *accord, e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989) (ordinance aimed at accomplishing purposes "unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others"). That is true here.

The new sign ordinance imposes burdens on speech by limiting the *size* and *placement* of signs that may be erected in the City, in an (ostensible) effort to protect property values, prevent distractions for drivers, and avoid aesthetic clutter, but it is silent as to ideas, views, or content. Nothing in the ordinance remotely suggests "disagreement with the message[s] [that might be] convey[ed]" on signs posted within the City. *Iowa Right to Life,* 717 F.3d at 602. On its face, therefore,

the ordinance is now content-neutral. *See also, e.g., Peterson v. City of Florence,* 727 F.3d 839, 842 (8th Cir.2013) ( *per curiam* ) ("A regulation that serves purposes unrelated to the content of expression is deemed neutral."); *Mo. ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649, 659–60 (8th Cir.2003) (law content-neutral where legislature's concern was "not ... with the effect of the content of the advertisements, but rather with the effect of the act of communicating").

Because the new sign ordinance is content-neutral, the Court applies intermediate scrutiny, meaning it passes muster if it is "narrowly tailored to serve a significant government interest, and ... leave[s] open ample alternative channels for communication." *Clark,* 468 U.S. at 293.

It cannot seriously be disputed that the ills (allegedly) sought to be cured by the ordinance—traffic safety and aesthetics—are significant government interests. *See, e.g., Metromedia,* 453 U.S. at 507–08, 101 S.Ct. 2882 ("[T]he twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."); *Neighborhood Enters.,* 644 F.3d at 737–38 ("[A] municipality's asserted interests in traffic safety and aesthetics [are] significant").

The more complicated question is whether the new sign ordinance is "narrowly tailored" to serve these interests.

A municipality "may rely upon *any evidence* that is *reasonably believed* to be relevant for demonstrating a connection between speech and a substantial, independent government interest," which may simply include "common sense." *City of L.A. v. Alameda Books, Inc.,* 535 U.S. 425, 438–39 (2002) (emphases added); *accord, e.g., Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 555 (2001) ("[W]e have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even ... to justify restrictions based solely on history, consensus, and simple common sense.") (internal quotation marks and citation omitted).

The ordinance "need not be the least restrictive" means of serving the City's interests; a perfect fit between residents' First Amendment rights (on one hand) and the City's interests in traffic safety and aesthetics (on the other hand) is not required. *Ward,* 491 U.S. at 798–99. Rather, the ordinance must only avoid impairing "substantially more speech than is necessary." *Id.* (emphasis added); *accord, e.g., Hill,* 530 U.S. at 726 (emphasizing that "when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal"). In the Court's view, the ordinance here is reasonably fit to accomplish the City's stated goals, without prohibiting substantially more speech than necessary. *See Lorillard,* 533 U.S. at 554,

(restrictions on speech withstand scrutiny where there is a "reasonable fit" between regulation and stated goals); *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 480 (1989) ("What our decisions require is a 'fit' between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.") (internal quotation marks and citations omitted).  And the Court is "loath to second-guess the [City's] judgment to that effect." *Id.* at 478.

For these reasons, the Court concludes the City has satisfied its burden of showing the new sign ordinance is narrowly tailored to serve significant government interests-not perfect but reasonable.

The final step in analyzing the new sign ordinance is determining whether it leaves open "ample alternative channels for communication." *Ward,* 491 U.S. at 791. Simply put, it does. The ordinance does not ban signs altogether, but simply limits their location and size.  *Cf. City of Ladue,* 512 U.S. at 55–59 (invalidating sign ordinance that banned nearly all signs within city).  Residents may "go door-to-door to proselytize their views [and] may distribute literature in this manner ... or through the mails." *Frisby v. Schultz,* 487 U.S. 474, 484 (1988). They may contact others by telephone, speak at public meetings, place messages on their cars,

or use the internet or local media. *Id.; Phelps–Roper v. City of Manchester,* 697 F.3d 678, 695 (8th Cir.2012).  Governmental action generally will not be invalidated for failing to leave open ample alternative channels of communication unless an *entire medium* of public expression across a particular community has been foreclosed.  *See Hill,* 530 U.S. at 726; *Metromedia,* 453 U.S. at 525–27 (Brennan, J., concurring).  The Supreme Court has been especially hesitant to permit municipalities to completely close off channels of communication that provide inexpensive means of disseminating political messages.  *See, e.g., City of Ladue,* 512 U.S. at 54–56; *Martin v. City of Struthers,* 319 U.S. 141, 146 (1943) (holding invalid under the First Amendment a statute banning door-to-door distribution of handbills and circulars); *Lovell v. City of Griffin,* 303 U.S. 444, 451–52 (1938) (invalidating ordinance banning distribution of pamphlets).

Petitioners have not been completely barred from posting signs; indeed, they are free to post signs without any government interference if the signs comply with the size and location requirements.  They also enjoy several other methods of conveying their messages.  Accordingly, the Court concludes the new sign ordinance leaves open ample alternative channels of communication.

Petitioners alternatively argue that the City should be prohibited from enforcing the sign code against their sign based on the nonconforming use doctrine and related vested right doctrine.  "A 'nonconforming use' is a use of land that

lawfully existed prior to the enactment of a zoning ordinance, or an amendment to an existing zoning ordinance…" *Odegard Outdoor Adver., LLC v. Bd. of Zoning Adjustment of Jackson Cnty.*, 6 S.W.3d 148, 150 n.1 (Mo. 1999). "[A] new or modified ordinance may not be applied as to require the cessation of an established prior nonconforming use" because "[t]he prior use of the property establishes a vested property right." *State ex rel. Lee v. City of Grain Valley*, 293 S.W.3d 104, 107 (Mo. Ct. App. 2009) (internal quotation marks and citations omitted).

Petitioners' reliance on these doctrines is, however, misplaced. The Court of Appeals expressed no opinion with regard to the Code's location and size requirements of signs, rather the Court determined that the definition of what constituted a sign and what did not or what signs were exempt violated the First Amendment. Thus, the restrictions placed in the Zone regarding size and location without reference to the content therein remain. Petitioners' prior use was in violation of the location and size requirements, thus, the doctrines are inapplicable in this matter. See *Lamar Company, LLC v. City of Kansas City*, 330 S.W.3d 767, 773 (Mo.App. W.D. 2010)( "Respondent [holds] its property subject at all times to every valid exercise of the police power. **The filing of its [permit] application gave it no vested right.** Had the permit been granted…it would have conferred no additional property right; it would merely have rendered respondent immune from prosecution for violation of the city's building code." (emphasis in original). *Id.*

Petitioners fair no better under the equitable estoppel theory. Nothing in the record before the Court establishes that the City selectively targeted Petitioners in the enforcement of the valid size and location restrictions in the Zoning Code.

## Conclusion

For all of these reasons, the Court determines that the new sign ordinance is a valid place, and manner restriction—it is content-neutral and serves substantial government interests without unreasonably limiting alternative avenues of communication. The City's Motion will be granted, and Petitioners' Motion denied.

Accordingly,

**IT IS HEREBY ORDERED** that Sections 26.68.020(17), 26.68.030 and 26.68.050 of the former Sign Code are severable from the Code.

**IT IS FURTHER ORDERED** that application of the size and location restrictions to Plaintiff's sign is proper.

**IT IS FURTHER ORDERED** that Respondents' Motions for Entry of Judgment is granted.

A separate judgment is entered this same date.

Dated this 24th day of April, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE